1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JWAL SHELAT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KAIZENCURE LLC, d/b/a CRAFTORIA,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Jwal Shelat ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Kaizencure LLC d/b/a Craftoria ("Defendant" or "Craftoria").

## NATURE OF THE ACTION

1.      Many adults purchase paint-by-numbers kits as a "low-stakes way to decompress."[1] Defendant seeks to carve out its own share of this competitive market by offering perpetual "sales" and discounted prices through its online e-commerce store.

2.      It is no secret that consumers actively seek out bargains and discounted items when making purchasing decisions.  Retailers, including Defendant, are well aware of consumers' susceptibility to such perceived bargains.  Products perceived by consumers to be discounted, however, are not always actual bargains.  In an effort to give off the appearance of a bargain, Defendant intentionally misleads consumers as to the quality and value of the merchandise available on its website (the "Products") through its deceptive sales tactics.

3.      When consumers visit Defendant's online store, they are shown purported "sale" prices on nearly <u>all</u> of Defendant's Products, including new product lines:

**Figure 1:**



_____

[1] https://www.washingtonpost.com/lifestyle/wellness/looking-for-a-stress-soothing-craft-try-an-old-one-paint-by-numbers/2020/08/11/22368d94-d050-11ea-8d32-1ebf4e9d8e0d_story.html

4.      But Defendant's purported "sales" are anything but.  As can be seen from online archives documenting Defendant's pricing and sale history, Defendant never actually sells its Products at the advertised strike-through price.

5.      It is well established that false "reference" pricing violates state and federal law. Nonetheless, Defendant employs inflated, fictitious reference prices for the sole purpose of increasing its sales.  Defendant engages in this deceptive practice to deceive consumers, including Plaintiff, into believing they are receiving a bargain on their online purchases.  This induces customers to make purchases that they otherwise would not have made.

6.      As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiff and members of the Class, as defined herein, were induced into purchasing the Products under the false premise that they were of a higher grade, quality, or value than they actually were.

7.      Plaintiff seeks relief in this action individually and on behalf of all purchasers of the Products for violations of the California Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, fraud, and unjust enrichment. Through this action, Plaintiff seeks to enjoin Defendant from its false and deceptive sales practices, and Plaintiff seeks to obtain actual and statutory damages, restitution, injunctive relief, and reasonable attorneys' costs and fees.

## PARTIES

8.      Plaintiff Jwal Shelat is an individual consumer who, at all times material hereto, was a citizen of California and a resident of Dublin, California.

9.      Mr. Shelat made a purchase from Defendant's e-commerce website, including a "Mystical Blooms" paint-by-numbers kit (the "Product").  Mr. Shelat purchased the Product on or about February 2024, for a "sale" price of $29.95.  The Product Mr. Shelat purchased displayed an original, strike-through price of $49.95, representing a $20.00 "discount."

10.      Before purchasing the Product, Mr. Shelat reviewed information about the Product, including Defendant's representations that the Product was being offered at a discounted "sale" price, including but not limited to that the product was "on sale" and that the original, non-sale

strikethrough price of the Product was higher than the advertised price.  When purchasing the Product, Mr. Shelat also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendant that the Product was ordinarily offered at a higher price.

11.  Mr. Shelat relied on Defendant's false, misleading, and deceptive representations and warranties about the Product in making his decision to purchase the Product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Product, or would not have paid as much for the Product, had he known Defendant's representations were not true.  Defendant's representations about its Products are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.

12.  Mr. Shelat understood that his purchase involved a direct transaction between himself and Defendant, because the Product he purchased came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

13.  Defendant Kaizencure, LLC is a Delaware limited liability company with a principal place of business in Albuquerque, NM.  Defendant manufactures, markets, and advertises and distributes its Products throughout the United States, including California.  Defendant manufactured, marketed, and sold the Products during the relevant Class Period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Products were primarily or exclusively carried out by Defendant.

## JURISDICTION AND VENUE

14.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the Class is a citizen of a State different from the Defendant.

15.  This Court has personal jurisdiction over Defendant because events giving rise to the cause of action occurred as a result of Defendant's purposely directed contacts with California.

Defendant purposely sold the Products that gave rise to the cause of action in California. Defendant's misrepresentations about the Products were purposely directed to this District and Plaintiff viewed and relied upon these representations in this District. Further, Defendant conducts and transacts business in this District and contracts to supply goods within this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and because Defendant transacts business and/or has agents within this District. Plaintiff Shelat resides in this District, and purchased the Products and suffered his primary injury in this District.

## **FACTUAL ALLEGATIONS**

17.     Defendant manufactures, markets, sells, and distributes its Products throughout the United States, including California, through its online e-commerce store.

### ***State And Federal Pricing Guidelines***

18.     California law provides clear guidelines as to permissible and unlawful sales tactics:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

19.     Additionally, California law expressly prohibits making false or misleading statements of fact "concerning reasons for, existence of, or amounts of price reductions." *See* Cal. Civ. Code § 1770(a)(13).

20.     The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics. *See* 16 C.F.R. § 233.

21.     The FTC provides the following guidance on former price comparisons:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

22.    The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**."  16 CFR § 233.1(b) (emphasis added).

23.    The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.**  Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

24.    Essentially, federal and state law provides that sales practices should be offered in good-faith and accurately reflect the price at which comparable products are sold in the market.

***<u>Defendant's Deceptive Sales Practices</u>***

25.     Defendant primarily sells its Products through its e-commerce website.

26.     In an effort to increase sales, Defendant engages in a pervasive online marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted "sale" price.  Defendant is aware that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a product's quality or value is difficult to discern.[2]

27.     Defendant has multiple methods of deceiving consumers into believing that they are receiving a bargain on the paint-by-numbers kits they purchase through Defendant's online store.

28.     First, Defendant deceives consumers through the utilization of a fictitious strikethrough reference price accompanied by a purported lower discounted price:

**<u>Figure 2</u>**






29.     Such representations are uniform for <u>all</u> Products listed on Defendant's website.

Second, Defendant perpetually advertises offers as limited in time when they are not.  For example, on June 21, 2024, Defendant instructed customers: "Don't miss out on the limited-time warehouse sale – order your Easy Paint By Numbers kit today!"

---

[2] *Information and Consumer Behavior*, Phillip Nelson, JOURNAL OF POLITICAL ECONOMY 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

**Figure 3**

# START YOUR CREATIVE JOURNEY TODAY

Craftoria invites you to embark on a creative journey with our Easy Paint By Numbers kits. Our kits provide everything you need to decorate your walls with personalized art, give a thoughtful present, or engage in a soothing pastime. Don't miss out on the limited-time warehouse sale—order your Easy Paint By Numbers kit today!

And Defendant offered consumers the below purported "Special Offer"

**Figure 4**

## PAINT BY NUMBERS

⭐ SPECIAL OFFER ⭐

BUY ANY 2, GET 1 FREE
BUY ANY 4, GET 2 FREE
BUY ANY 6, GET 3 FREE

ADD 3 DESIGNS TO YOUR CART FOR THE DISCOUNT!

30.     Despite advertising that this is a *limited-time warehouse sale*, and a *special offer*, a few days earlier, on June 17, 2024, Defendant had the same sale ongoing, this time branded as a Father's Day Sale.

**Figure 5**

⭐ FATHER'S DAY SALE ⭐

BUY ANY 2, GET 1 FREE
BUY ANY 4, GET 2 FREE
BUY ANY 6, GET 3 FREE

ADD 3 DESIGNS TO YOUR CART FOR THE DISCOUNT!

31.     A month prior, on May 20, 2024, Defendant *still* had the exact same sale ongoing, branded as a special offer again.

**Figure 6**

✦ SPECIAL OFFER

BUY ANY 2, GET 1 FREE
BUY ANY 4, GET 2 FREE
BUY ANY 6, GET 3 FREE

ADD 3 DESIGNS TO YOUR CART FOR THE DISCOUNT!

32. On January 10, 2024, over four months prior, Defendant had the same "sales" ongoing—even going so far as explicitly advertising that the bundling discount would expire.

**Figure 7**

NEW YEARS SALE ENDS TODAY!

BUY ANY 2, GET 1 FREE
BUY ANY 4, GET 2 FREE
BUY ANY 6, GET 3 FREE

ADD 3 DESIGNS TO YOUR CART FOR THE DISCOUNT!

33. Up to and including the date of filing of this complaint, Defendant's deceptive practices have continued, as shown in the below screenshots:

**Figure 8:**

🔶 BULK DISCOUNTS 🔶

BUY ANY 2, GET 1 FREE
BUY ANY 4, GET 2 FREE
BUY ANY 6, GET 3 FREE

ADD AT LEAST 3 DESIGNS TO YOUR CART FOR THE DISCOUNT!

**Figure 9:**

# START YOUR CREATIVE JOURNEY TODAY

Craftoria invites you to embark on a creative journey with our Easy Paint By Numbers kits. Our kits provide everything you need to decorate your walls with personalized art, give a thoughtful present, or engage in a soothing pastime. Don't miss out on the limited-time warehouse sale—order your Easy Paint By Numbers kit today!

34.     Upon information and belief, the strikethrough reference prices and "special offer" discounts listed by Defendant are purely fictitious prices and not based on comparable sales offerings in the market, nor are they the former price at which such Products were originally sold for.  Instead, this fictitious price is merely offered for the purpose of deceiving consumers into believing they are receiving a bargain for their purchases.

35.     In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

36.     Defendant never sells its Products at the advertised strike-through prices.  Such findings were confirmed through online archives documenting Defendant's pricing and sale history.

37.     Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiff's purchases.

38.     Plaintiff was harmed as a direct and proximate result of Defendant's acts and omissions.

39.     Defendant commits the same unfair and deceptive sales practices for all of its Products.

40.     Plaintiff and members of the Class are not receiving the bargain or value that Defendant has misled them to believe.

1

## CLASS ALLEGATIONS

2      41.    Plaintiff brings this matter on behalf of himself and those similarly situated.  As

3   detailed at length in this Complaint, Defendant orchestrated deceptive sales practices.  Defendant's

4   customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this

5   Complaint is uniquely situated for class-wide resolution, including injunctive relief.

6      42.    The Class is defined as all consumers who purchased the Products during the

7   applicable statute of limitations period (the "Class Period) in California (the "Class").

8      43.    The Class is properly brought and should be maintained as a class action under Cal.

9   Code Civ. Proc. § 382, satisfying the class action prerequisites of numerosity, commonality,

10   typicality, and adequacy because:

11      44.    Numerosity: Class Members are so numerous that joinder of all members is

12   impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members

13   described above who have been damaged by Defendant's deceptive and misleading practices.

14      45.    Commonality: The questions of law and fact common to the Class Members which

15   predominate over any questions which may affect individual Class Members include, but are not

16   limited to:

17      (a)    Whether Defendant is responsible for the conduct alleged herein which was

18            uniformly directed at all consumers who purchased the Products;

19      (b)    Whether Defendant's misconduct set forth in this Complaint demonstrates that

20            Defendant engaged in unfair, fraudulent, or unlawful business practices with

21            respect to the advertising, marketing, and sale of the Products;

22      (c)    Whether Defendant made false and/or misleading statements concerning the

23            Products that were likely to deceive a reasonable consumer and/or the public;

24      (d)    Whether Plaintiff and the Class are entitled to injunctive relief; and

25      (e)    Whether Plaintiff and the Class are entitled to money damages under the same

26            causes of action as the other Class Members.

27      46.    Typicality: Plaintiff is a member of the Class he seeks to represent.  Plaintiff's

28   claims are typical of the claims of each Class Member in that every member of the Class was

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    10

susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

47.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interest does not conflict with the interests of the Class members he seeks to represent; his consumer fraud claims are common to all other members of the Class and he has a strong interest in vindicating their rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action. Plaintiff has no interests which conflicts with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

48.     Further, a class action is superior to any other available method for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable. Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained. Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments. By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

49.     Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## <u>COUNT I</u>
### Violation of Consumers Legal Remedies Act
### ("CLRA") Civil Code §§ 1750, *et seq.*

50.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

52.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

53.     Plaintiff and members of the Class are consumers who purchased Defendant's Products for personal, family, or household purposes.  Accordingly, Plaintiff and members of the Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

54.     At all relevant times, Defendant's Products constituted "goods," as that term is defined in Cal. Civ. Code § 1761 (a).

55.     At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(e).

56.     At all relevant times, Plaintiff's purchase of Defendant's Products, and the purchases of other Class members, constituted "transactions," as that term is defined in Cal. Civ. Code § 1761 (e).

57.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

58.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiff and the Class.  Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

59.     Defendant advertised goods or services with intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9).

60.     Defendant made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of California Civil Code § 1770(a)(13).

61.     Defendant violated California Civil Code §§ 1770(a)(9) and (a)(13) by representing that its Products were "on sale" and displaying a strikethrough reference price.

62.     Plaintiff and members of the Class suffered injuries caused by Defendant's misrepresentations because (a) Plaintiff and members of the Class would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and members of the Class paid a price premium due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level of quality or value as promised.

63.     Wherefore, Plaintiff seeks injunctive relief for this violation of the CLRA.

**COUNT II**
**Violation of False Advertising Law**
**("FAL") Business & Professions Code §§ 17500, *et seq.***

64.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

66.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

67.     California's FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."  *See* Cal. Bus. & Prof. Code § 17501.

68.     Defendant violated California's FAL by representing that its Products were "on sale" and displaying a strikethrough reference price.  Defendant never offered the Products at the

advertised strike-through price.  Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

69.     Defendant's actions in violation of § 17500 were false and misleading such that the general public was likely to be deceived.

70.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality or value.

71.     Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers.  Plaintiff and members of the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

<u>**COUNT III**</u>
**Violation of Unfair Competition Law**
**Business & Professions Code §§ 17200, *et seq.***

72.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

73.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

74.     Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for violations.

75.     "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

76.     Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

77.     Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, FAL, and federal regulations as described herein.

78.     Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by representing that its Products were "on sale" and displaying a strikethrough reference price.  Defendant never sold its Products at the advertised strikethrough price.  Such deceptive marketing practices misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

79.     As detailed above, the CLRA prohibits a business from "[a]dvertising goods or services with intent to not sell them as advertised."  Cal. Civ. Code § 1770(a)(9).

80.     Further, the CLRA prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(13).

81.     California law also expressly prohibits false reference price schemes.  Specifically, the FAL provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and

conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

82.  Federal regulations also provide:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

83.  The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**."  16 C.F.R. § 233.1(b) (emphasis added).

84.  The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.**  Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

85.   As described herein, the alleged acts and practices resulted in violations of federal and state law.

86.   Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injuries to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff and members of the California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

87.   Defendant's practices as described herein are of no benefit to consumers, who are tricked into believing that the Products are of a higher grade, quality, worth, and/or value than they actually are.  Defendant's practice of injecting misinformation into the marketplace about the value of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about its Products.  Taking advantage of that trust, Defendant misrepresents the value of its Products to increase its sales.  Consumers reasonably believe that Defendant is an authority on the value of paint-by-numbers kits and therefore reasonably believe Defendant's representations that its Products are of a higher grade, quality, worth, and/or value than they actually are.

88.   Defendant's conduct described herein violated the "fraudulent" prong of the UCL by representing that the Products were of a higher grade, quality, worth, and/or value, when in fact they were not.

89.   Plaintiff and members of the Class are not sophisticated experts with independent knowledge of the value of paint-by-numbers kits, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

90.   Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

91.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Thus, Plaintiff and members of the Class are entitled to preliminary and injunctive relief.

**COUNT IV**
**Fraud**

92.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

93.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

94.     As discussed above, Defendant failed to disclose material facts about its sales practices, including that its "sale" prices were the normal prices at which the Products were typically sold, that its strikethrough prices were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

95.     These omissions made by Defendant, as described above, upon which Plaintiff and members of the Class reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class to purchase the Products.

96.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Unjust Enrichment**

97.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

98.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

99.     Plaintiff and members of the Class conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

100.     Defendant has knowledge of such benefits.

101.     Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are "on sale" and displaying a strikethrough

reference price. These misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

102.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class Members;

B.    An order declaring Defendant's conduct violates the statutes referenced herein;

C.    Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its sales practices and to comply with consumer protection statutes;

D.    Awarding monetary damages, including treble damages;

E.    Awarding punitive damages;

F.    Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

G.    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  August 2, 2024

**BURSOR & FISHER, P.A.**

By:  ___/s/ Neal J. Deckant_____

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorney for Plaintiff*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2

I, Neal J. Deckant, declare as follows:

3

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this

4

declaration to the best of my knowledge, information, and belief of the facts stated herein.

5

2.      The complaint filed in this action is filed in the proper place for trial because many

6

of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff

7

Jwal Shelat alleges that he resides in this District.

8

3.      Plaintiff Jwal Shelat alleges that he is a citizen of California and resident of Dublin,

9

California.

10

I declare under penalty of perjury under the laws of the United States and the State of

11

California that the foregoing is true and correct, executed on August 2, 2024, at Walnut Creek,

12

California.

13

14

_____
                Neal J. Deckant

15

16

17

18

19

20

21

22

23

24

25

26

27

28